# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                       No. 1:07-cr-0518-WJ

KENNETH SCHULTZ,

    Defendant.

## ORDER DENYING DEFENDANT'S MOTION
## TO ENFORCE PARAGRAPH 14 OF THE PLEA AGREEMENT

THIS MATTER comes before the Court on Defendant's Motion to Enforce Paragraph 14 of the Plea Agreement **(Doc. 77, filed 3/23/18)**. Defendant Kenneth Schultz ("Defendant Schultz") asserts that he should be released from his outstanding obligation to make payments towards a joint and several restitution fund, imposed upon him as part of a Plea Agreement with the Government. Having considered the parties' briefs and the applicable law, the Court finds that Defendant Schultz's Motion is not well-taken and, therefore, is **DENIED.**

### BACKGROUND

Defendant Schultz pleaded guilty to one count of conspiracy and one count of mail fraud pursuant to a cooperation agreement with the Government in connection with the prosecution of former New Mexico Senator Manny Aragon and others for fraudulent overbilling in construction of the Metropolitan Courthouse in Albuquerque, New Mexico. Plea Agreement, Doc. 8 (filed 3/20/07). Defendant Schultz's plea agreement stated that he would be subject to an order to pay

1

restitution "as may be ordered by the Court pursuant to law." Doc. 8, ¶ 4. The Plea Agreement further stated that

> The United States agrees that any order of restitution entered as part of the Defendant's criminal sentence should be limited to the scope of the Defendant's criminal agreement and to losses suffered by the State of New Mexico that were foreseeable by the Defendant. The United States agrees that, in fashioning a sentence in this case, including any order of restitution, the Court should consider the amount by which the Defendant actually benefitted financially from his conduct, which the parties estimate to be approximately $50,000.00. The United States further agrees that, to the extent that any other person may actually pay restitution as part of a criminal sentence in a related case as to losses for which the Defendant has also been determined by the Court to be liable, the Defendant should be entitled to a reduction in restitution payments by a like amount.

Doc. 8, ¶ 14. Pursuant to the Government's motion for a downward departure on Defendant Schultz's behalf, Judge Conway imposed a sentence of five years' probation. Judgment of Conviction, Doc. 32 at 2 (filed 4/30/09).

The Court further sentenced Defendant Schultz to pay restitution to the State of New Mexico in the amount of $591,370.00. Doc. 32 at 4. Of this amount, Defendant Schultz was to pay $50,000.00 individually, and the remaining $541,370.00 was to be paid by Schultz jointly and severally with co-conspirators Manny Aragon, Toby Martinez, and Marc Schiff. *Id.* The Court ordered that Defendant Schultz's lump-sum payment of $50,000 be made within sixty days of the entry of the Judgment. *Id.* The Judgment further provided that Defendant Schultz's payments towards satisfaction of his joint and several liability were to be made in monthly installments of no less than fifteen percent of his net monthly income. *Id.*

The attorney for the Government provides that, as of December 27, 2017, Defendant Schultz has made payments totaling $100,136.31 towards restitution. Doc. 79 at 3. The Government thus agrees that Defendant Schultz has paid his individual restitution obligation of $50,000 in full. *Id.* The Government provides that the remainder of Defendant Schultz's

payments have been credited against his special penalty assessments (totaling $200), and against the outstanding joint and several restitution obligation. *Id.*

The United States also provides that "[i]n addition to being ordered to pay the amount of $541,370.00 jointly and severally with Schultz, co-conspirators Manny Aragon, Toby Martinez and Marc Schiff were ordered to pay restitution in their individual capacities in the amounts of $649,272.00, $2,169,448.66, and $136,645.00, respectively." Doc. 79 at 3, n.1. For his argument, Defendant relies on the chart he obtained from the United States Probation Office,[1] which reflects the various payments made by Defendant Schultz and his co-defendants as of November 3, 2017. The chart reflects that Mr. Aragon had paid total restitution of $759,790.70; Mr. Martinez had paid total restitution of $15,913.34; and Mr. Schiff had paid total restitution of $231,295.95. Doc. 77-1. The chart reflects that of the amounts paid in total, the following amounts had been attributed to the Victim Joint and Several Restitution fund: $110,518.38 by Mr. Aragon; $3,177.97 by Mr. Martinez; and $94,650.57 by Mr. Schiff. Doc. 77-1. These amounts are in addition to the $49,039.22 paid by Mr. Schultz to the joint and several fund. The Government provides that the outstanding balance on the joint and several restitution account is $272,103.86 as of April 23, 2018. Doc. 79 at 3.

## DISCUSSION

### I.  Parties' Positions

Defendant Schultz asserts that the payments by his co-conspirators should satisfy his remaining joint and several restitution obligation because their total restitution payments exceed the amount of the joint and several restitution order, such that Defendant Schultz should be released from any obligation to continue making payments towards that sum. Defendant Schultz argues that "[t]he promise here [wa]s that Mr. Schultz's joint and several liability would be

---

[1]  No party disputes the chart's authenticity or accuracy, and all parties refer to the chart. *See* Doc. 77-1.

reduced by payments made by his co-defendants. [The Plea Agreement] did not say that the co-defendants would have individual liability separate from his." Doc. 80 at 3. He claims that the Plea Agreement "did not provide a mechanism by which the Court can determine what individual liability could be considered separately from the joint and several." *Id.*

Defendant thus asserts that Paragraph 14 of the Plea Agreement is ambiguous and that "ambiguities in plea agreements are construed against the government." *United States v. Jordan*, 853 F.3d 1334, 1341 (10th Cir. 2017) (citation omitted). He contends that the Government's position is one of "rigid" interpretation, and that Tenth Circuit law prohibits the Government from relying "upon a rigidly literal construction of the language of the agreement to escape its obligations under the agreement." *United States v. Brye*, 146 F.3d 1207, 1210 (10th Cir. 1998) (citations and quotation marks omitted). The result, Defendant Schultz argues, is "absurd" because he is "now paying the same percentage of joint and several liability as his far more culpable codefendants." Doc. 80 at 5. He claims that he could not have reasonably understood this to be the agreement when he entered the plea with the Government, and that as a result, there is a factual dispute about whether the Government has breached the agreement.

The Government contends that Defendant is incorrect in his interpretation of the plea agreement because it would be unreasonable to conclude that Defendant Schultz would be entitled to offset his joint and several restitution obligation with payments that his co-conspirators made against their own individual restitution obligations. Doc. 79 at 6. The Government explains that "as was true of Schultz himself, substantial portions of Aragon's, Martinez's and Schiff's payments were credited against their individual restitution obligations." *Id.* at 4. The Government asserts it has fulfilled Paragraph 14 of the Plea Agreement because Defendant Schultz received credit against his joint and several restitution obligation to the extent

4

that his co-conspirators made payments towards the same obligation. *Id.* at 5.

## II. Application of law

The defense points to the two-step process articulated by the Tenth Circuit in *United States v. Rockwell International Corp.*, 124 F.3d 1194 (10th Cir. 1997), for the Court to use when examining the terms of a plea agreement. In *Rockwell*, the Circuit provided that "first, the court examines the nature of the government's promise; second, the court investigates this promise based upon the defendant's reasonable understanding at the time the guilty plea was entered." 124 F.3d at 1199. The Court looks to the language of the agreement to determine the nature of the Government's promise. *Id.* The relevant language in Paragraph 14 of the Plea Agreement provides that "to the extent that any other person may actually pay restitution as part of a criminal sentence in a related case as to *losses for which the Defendant has also been determined by the Court to be liable*, the Defendant should be entitled to a reduction in restitution payments by a like amount." Doc. 8 at ¶ 14. As the Government explains, the individual restitution obligations of the three co-defendants are "by definition, not 'losses for which [Schultz] has also been determined by the Court to be liable." Doc. 79 at 6.The language of Paragraph 14 does not state that Defendant Schultz would be entitled to offset his joint and several restitution obligation with payments by his co-defendants towards their own individual restitution obligations, if his co-defendants were subject to such obligations. There is no apparent ambiguity in Paragraph 14 that would lead to the conclusion that Defendant Schultz proposes.

Regarding the second step of the *Rockwell* analysis, the Court finds that Defendant Schultz could not have reasonably concluded that his co-defendants' restitution payments would be credited to the joint and several account before their individual obligations, contrary to Defendant Schultz's own experience with his restitution payments. Whether and to what extent

5

Defendant Schultz was informed about the financial obligations imposed individually upon the three co-defendants does not change the outcome because of the objective "reasonableness" standard. First, it would be unreasonable for Defendant Schultz to assume that his co-defendants did not have such individual obligations because, as the defense provides, "[i]t cannot be disputed that Mr. Schultz played the smallest role compared to his three co-defendants." Doc. 80 at 5. Second, it would be unreasonable to assume that the individual restitution obligations would not be prioritized as they were for Defendant Schultz, who was required to pay his $50,000 individual debt before any of his payments were attributed to the joint and several fund. Doc. 32 at 4. Thus, regardless of Defendant Schultz's subjective beliefs, the reasonable interpretation of the Plea Agreement was that Defendant Schultz would be entitled to offsets from his joint and several restitution obligation only for his co-defendants' payments towards that fund, and not towards their individual restitution obligations.

The chart obtained from the United States Probation Office reflects the truth of the Government's assertion that payments made by the co-defendants were credited against their individual restitution obligations, with the remaining amounts going towards the joint and several obligation. Doc. 79 at 4. The payment amounts correspond with the Government's assertion;[2] the Court does not need to rehash the supporting arithmetic that the Government provides in its brief (Doc. 79 at 4–5). Thus, the Court rejects Defendant Schultz's argument that the method for crediting the payments is ambiguous, as the arithmetic reflected in the chart obtained by defense, and as detailed by the Government, demonstrates how the payments are attributed to the restitution accounts.

---

[2] The payments made by Martinez do not indicate that he has satisfied his individual restitution obligation, despite $3,177.97 of his payments being allocated to the joint and several fund. The Court is not troubled by the distribution of this sum to the joint and several account, considering the other three co-defendants appear to have satisfied their individual restitution obligations. Doc. 77-1.

Furthermore, while Defendant Schultz claims this apportionment has led to an "absurd" result (Doc. 80 at 5), the Judgment of Conviction unambiguously provided that Defendant Schultz's payments towards satisfaction of his joint and several liability were to be made in monthly installments of no less than fifteen percent of his net monthly income. Doc. 32 at 4. The Judgement also imposed joint and several restitution in an amount of $541,370.00. Doc.32 at 4. The Plea Agreement's language that Defendant Schultz would be sentenced to "restitution as may be ordered by the Court pursuant to law" supports these parts of the sentence. Doc. 8 at ¶ 4(b)(5). Defendant Schultz's argument in this respect misses the point of joint and several liability, as "[b]y definition, being jointly and severally liable means that each individual remains responsible for payment of the entire liability, so long as any part is unpaid." *United States v. Fanning*, No. 00-5066, 2000 U.S. App. LEXIS 18536, at *2–3 (10th Cir. Aug. 2, 2000).

## CONCLUSION

Thus, the Court rules that an evidentiary hearing is not required to resolve Defendant Schultz's motion, as there is no evidence that the Government breached the Plea Agreement. The Government has fulfilled its role in the Plea Agreement by offsetting the joint and several restitution sentence of $541,370.00 with payments by Defendant Schultz's co-defendants. There is no ambiguity in Paragraph 14 of the Plea Agreement that would reasonably lead to Defendant Schultz's proposition that his joint and several liability should be offset by his co-defendants' payments towards their individual restitution obligations.

For these reasons, the Defendant's Motion to Enforce Paragraph 14 of the Plea Agreement **(Doc. 77)** is **DENIED**.

**IT IS SO ORDERED.**

_____
CHIEF UNITED STATES DISTRICT JUDGE